IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CT-3068-FL

KEITH HARNED,                                    )
                                                 )
            Plaintiff,                           )
                                                 )
      v.                                         )                    ORDER
                                                 )
UNITED STATES OF AMERICA,                        )
UNITED STATES DEPARTMENT OF                      )
JUSTICE; FEDERAL BUREAU OF                       )
INVESTIGATION; FEDERAL                           )
BUREAU OF PRISONS; BUTNER                        )
FEDERAL CORRECTIONAL                             )
INSTITUTION; BUTNER FEDERAL                      )
MEDICAL CENTER;  WARDEN                          )
SARA M. REVELL,  ASSOCIATE                       )
WARDEN SEPANEK, ASSOCIATE                        )
WARDEN CAMPOS, ASSOCIATE                         )
WARDEN HISCOCKS, CAPTAIN M.                      )
DOYLE, MANAGER J. BELL,                          )
GENERAL FOREMAN;                                 )
SUPERVISOR C. BIRCH, DR.                         )
JIMENEZ, DR. C. DUCHESNE, DR.                    )
TAWFIQ ANSARI, DR. JEAN                          )
LINZAU, NURSE R. CLIFTON, and                    )
P.A. A. CARTER, and JOHN AND                     )
JANE DOES 1-45.                                  )
                                                 )
            Defendants.                          )

      The matter comes before the court on defendants' motion to dismiss, or in the alternative,

for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 83),[1] motion to dismiss

pursuant to Rule 12(b)(6) (DE 93), and motion to seal (DE 86).   Plaintiff responded in opposition

_____

[1]  The parties have attached documents which are outside of the scope of their pleadings.  Thus, the court will
construe defendants' motion as a motion for summary judgment.

to defendants' substantive motions, including with such response a request for continuance to conduct discovery, which the court construes as a motion for discovery pursuant to Federal Rule of Civil Procedure 56(d) (DE 100). In this posture, the issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motion to seal, denies plaintiff's motion, and grants defendants' dispositive motions.

## STATEMENT OF THE CASE

On March 26, 2013, plaintiff, a federal inmate incarcerated at the Federal Correctional Complex in Butner, North Carolina ("FCC Butner"), brought this action *pro se* against the United States of America, the United States Department of Justice, the Federal Bureau of Prisons, the Federal Correctional Institution at Butner, North Carolina ("FCI Butner"), the Federal Medical Center ("FMC") Butner, Warden Sara M. Revell ("Revell"), Associate Warden Sepanek ("Sepanek"), Associate Warden Campos ("Campos"), Associate Warden Hiscocks ("Hiscocks"), Captain M. Doyle ("Doyle"), Manager J. Bell ("Bell"), General Foreman, Supervisor C. Birch ("Birch"), Dr. Jimenez ("Jimenez"), Dr. C. Duchesne ("Duchesne"), Dr. Tawfiq Ansari ("Ansari"), Dr. Jean Linzau ("Linzau"), Nurse R. Clifton ("Clifton"), P.A. A. Carter ("Carter"), and John Does 1-45. Plaintiff alleged claims pursuant to both the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 2672, *et seq.* and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Plaintiff's claims were related to defendants' construction and maintenance of FCI Butner's recreational facility as well as the provision of medical care.

On April 9, 2014, the court conducted a frivolity review of plaintiff's case pursuant to 28 U.S.C. § 1915(e)(2)(B). The court allowed plaintiff to proceed with his FTCA action against the United States only, and dismissed without prejudice the remaining defendants named in his

2

FTCA action.  The court also allowed plaintiff to proceed with his <u>Bivens</u> claim relating to his medical care against defendants Revell, Campos, Hiscocks, Jimenez, Duchesne, Ansari, Linzau, Carter, and Clifton.  The court dismissed plaintiff's remaining claims without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

On June 12, 2014, defendant Linzau filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that plaintiff failed to state a claim upon which relief may be granted.  Plaintiff then filed a motion to amend his complaint on July 8, 2014.  On August 2, 2014, the remaining defendants filed a motion to dismiss pursuant to Rule 12(b)(6), arguing that plaintiff failed to state a claim.  The motions were fully briefed.  Plaintiff subsequently filed a motion for entry of default, a motion to strike, a motion to withdraw his motion for entry of default, a motion for appointment of counsel, and a second motion to amend his complaint.  The motions were fully briefed.  Defendant Linzau also filed a motion for leave to file an answer, which was fully briefed.

On December 3, 2014, the court entered an order granting plaintiff's motions to amend and defendant Linzau's motion for leave to file an answer.  The court also granted plaintiff's motion to withdraw his motion for entry of default and denied as moot plaintiff's motion for entry of default and motion to strike.  Finally, the court denied plaintiff's motion to appoint counsel.

On December 8, 2014, defendant Linzau filed a motion to dismiss plaintiff's first amended complaint arguing that plaintiff failed to state a claim upon which relief may be granted.  The motion was fully briefed.  Plaintiff subsequently filed two motions for an extension of time to file a second amended complaint in accordance with the court's December 3, 2014, order granting him leave to amend his complaint.  On February 13, 2015, the court entered an order granting plaintiff's motions to amend his complaint, and directed that plaintiff file his amended complaint by February 16, 2015.

Because the court permitted plaintiff to file a second amended complaint, the court denied without prejudice defendants' respective pending motions to dismiss and motion for summary judgment.

On February 23, 2015, plaintiff filed his second amended complaint in which plaintiff again raised FTCA claims related to the construction and maintenance of the softball field and his medical care. Plaintiff also raised <u>Bivens</u> claims related to his medical care. Defendant Linzau subsequently moved for an extension of time to answer plaintiff's second amended complaint. On April 21, 2015, the court entered an order granting defendant Linzau's motion for an extension of time to answer. The court also conducted a frivolity review of plaintiff's second amended complaint. The court allowed plaintiff to proceed with his FTCA claim against the United States and his <u>Bivens</u> claims against defendants Revell, Campos, Hiscocks, Ansari, and Linzau. The court dismissed without prejudice all other previously named defendants on the ground that plaintiff failed to set forth any factual allegations against such parties.

On May 4, 2015, defendants Ansari, Campos, Hiscocks, Revell, and the United States filed the instant motion for summary judgment. Alternatively, defendants assert the affirmative defense of qualified immunity. Defendants attach to their motion declarations from Ansari, Campos, and Hiscocks, as well as plaintiff's medical records, FTCA records, and administrative remedy records. Defendants also filed the instant motion to seal plaintiff's medical records, which records are attached to the motion for summary judgment as proposed sealed Exhibit 2. Defendant Linzau filed the instant motion to dismiss plaintiff's second amended complaint on May 5, 2015. In his August 26, 2015, response to the substantive motions, plaintiff attaches his declaration, his FTCA denial letter and envelope, a Federal Rule of Civil Procedure Rule 56(d) affidavit, certain inmate request forms, and administrative remedy records.

4

## STATEMENT OF FACTS

Except as where otherwise noted below, the undisputed facts are as follows. On August 10, 2010, plaintiff was injured while playing softball on the recreation field at FMC Butner. (2nd Am. Compl. (DE 80), ¶ 37.) Specifically, plaintiff was injured when "the ball struck a defective field condition causing the ball to strike [p]laintiff in the face causing significant trauma," including several fractured facial bones. (Id.)

At 7:45 p.m. on the same date, plaintiff reported to FMC Butner's Health Services Department, stating that he was injured while playing softball on the recreation yard. (2nd Am. Compl. ¶ 55; Ansari Decl. ¶ 6 and Def.'s Ex. 2 (DE 85), pp. 1-3.) Plaintiff informed medical staff that while charging a ground ball, the ball hit a rock, popped up, and caught plaintiff on the nose. (Ansari Decl. ¶ 6 and Def.s' Ex. 2, pp. 1-3.) Defendant Clifton examined plaintiff. (Id.) Plaintiff informed defendant Clifton that his nose was "kind of numb" and bleeding, but he denied difficulty breathing. (Id.) Defendant Clifton noted minimal swelling on plaintiff's arrival, and no deviated septum.[2] (Ansari Decl. ¶ 6 and Def.s' Ex. 2, p. 1.) Defendant Linzau, the physician on duty at that time, also examined plaintiff and noted no gross evidence of a fracture. (Def.'s Ex. 2, p. 3.) Plaintiff then was discharged back to his housing unit with the following instruction: "Application of ice packs to prevent or decrease swelling and discomfort. Use of over-the-counter pain meds." (Id. p. 2; Ansari Decl. ¶ 6.)

On August 13, 2010, defendant physician assistant Carter examined plaintiff. (Def.'s Ex 2, p. 4.) Plaintiff reported that the bleeding from his nose had stopped, but that his nose remained sore.

---

[2] Defendant Ansari notes in his declaration that a deviated septum is a condition in which the nasal septum (the bone and cartilage that divide the nasal cavity of the nose in half) is significantly off center, or crooked, and can make breathing difficult. (Ansari Decl. ¶ 6, n. 3.)

5

(Id.) Plaintiff also complained that he had bruising to his right eye. (Id.) After evaluating plaintiff, defendant Carter ordered electromagnetic radiation ("x-ray") testing to rule out a facial fracture. (Id.) Plaintiff's x-ray report documented the following: "Mid upper right nasal septal deviation. Nondisplaced fractures[3] are noted in the nasal bones on the lateral projection. The visualized portions of the orbital rims and paranasal sinuses are unremarkable." (Id. p. 6.) On August 13, 2010, defendant Carter ordered plaintiff transferred to Durham Regional Hospital for further evaluation. (Id. p. 8.) Medical staff at Durham Regional Hospital diagnosed plaintiff with a nasal and right zygomatic arch fracture and recommended that plaintiff see Dr. Robert Taylor the following week. (Id. p. 10.) On August 25, 2010, the Utilization Review Committee ("URC")[4] approved plaintiff for an outside medical consultation related to his fractured nose. (Id. p. 22.)

On August 30, 2010, plaintiff attended an appointment with Dr. Taylor. (Id. p. 23.) During his appointment, plaintiff told Dr. Taylor that he did not experience significant bleeding or swelling with his injury, but that he had noticed a change in his breathing since his accident. (Id.) Dr. Taylor made the following plan after examining and consulting with plaintiff:

> This appears to be either a nasal chip fracture of the nasal bone on the right or possibly subluxation of the cartilage as I informed him that is not possible to determine preop. Various options were discussed and he elected not to proceed with an open exploration of the area,

---

[3] Defendant Ansari defines a nondisplaced fracture as "one that is considered a stable fracture, wherein the broken ends of the bones meed up correctly and are aligned, and the bones usually stay in place during healing. (Ansari Aff. ¶ 15, n. 3.)

[4] The URC is a group of FCI Butner physicians, who regularly meet to review and approve, or deny, all specialty consult requests and requests for procedures. (Ansari Decl. ¶ 9.) This review is required for all consultation and procedure requests that will be performed either in-house at FCI Butner, or in the community by a community medical provider. (Id.)

> but will try doing a closed reduction of nasal fracture with stenting
> with packing as well as septoplasty. This will be done sometime in
> the near future.

(Id. p. 23.)

Following plaintiff's return to FMC Butner, defendant Carter saw plaintiff and entered the following medical note: "Patient returned from town trip for facial fracture. No recommendations received, but inmate states surgery is planned. Will await final documentation from consultant before requesting surgical procedure." (Id. p. 24.) A nurse also saw plaintiff that same day, and noted that plaintiff had no pain or complaints and that plaintiff was to have "bone fragment" removed from his nose. (Id. p. 26.) Defendant Ansari reviewed the medical notes from both appointments at the prison. (Id. pp. 25, 27.) Defendant Ansari states that he did not receive Dr. Taylor's medical report until November of 2010, and did not review the report until November 22, 2010. (Ansari Decl. ¶ 10 and Def.'s Ex. 2, p. 23.) Plaintiff disputes this fact. (DE 101 ¶ 2.)

In the interim, defendant Ansari and BOP medical staff treated plaintiff for medical issues related to his complaints of groin pain, chronic lower back pain, and abdominal pain on October 18-19, 2010, October 25, 2010, November 1, 2010, December 14, 2010, and December 28, 2010. (Ansari Decl.¶ 11; Def.s' Ex. 2, pp. 28-39.) Plaintiff did not complain of nasal pain or difficulty breathing during the aforesaid appointments. (Id.)

On April 29, 2011, defendant Ansari examined plaintiff. (Ansari Decl. ¶ 15.) After conducting his examination, defendant Ansari ordered a follow-up x-ray of plaintiff's nasal bones. (Id. ¶ 15 and Def.'s Ex. 2 (DE 85), p. 44.) Plaintiff had the x-rays on May 3, 2011, and the radiologist made the following findings:

> Persistent nondisplaced lucencies are present which are transverse to
> the long axis of the nasal bones. A similar finding was present on

7

> previous exam. Findings would be consistent with nondisplaced fractures which are less apparent on todays examination, which could be related to interval healing. Displaced nasal bone fracture is not identified. Mild mucosal thickening involving maxillary sinuses.

(Def.'s Ex. 2 (DE 85), p. 45.) On May 6, 2011, defendant Ansari reviewed plaintiff's x-ray results. (Ansari Decl. ¶ 15.) In 2011, BOP medical staff saw plaintiff on the following additional dates: February 15, 2011; April 13, 2011; May 13, 2011; July 29, 2011; August 2, 2011; August 12, 2011; August 30, 2011; September 27, 2011; October 20, 2011; and October 28, 2011. (Ansari Decl. ¶ 16; Def.s' Ex. 2 (DE 85), pp. 40- 42, 46-64.) The records from these encounters do not reflect that plaintiff complained about pain in his nose or any difficulty breathing. (Id.)

On October 11, 2011, a FMC Butner physician assistant examined plaintiff in response to plaintiff's complaint of chronic left elbow pain. (Id. pp. 65-66.) In the course of the examination, plaintiff reported restricted breathing through his nose, but did not report any nasal pain. (Id.) Then, on January 6, 2012, plaintiff reported that he had a broken bone in his nasal, zygomatic arch and had a deviated septum. (Id. pp. 70-71.) At the conclusion of his examination, plaintiff was diagnosed with "elbow chronic lateral epicondylitis" and was "cleared for ortho surgery." (Id. p. 71.) On the same date, defendant Ansari also examined plaintiff and stated in his affidavit that plaintiff did not complain that he was experiencing pain in his nose or having difficulty breathing. (Ansari Decl. ¶ 19 and Def.s' Ex. 2 (DE 85), pp. 72-73.) Plaintiff, instead, complained of left wrist pain. (Def.'s Ex. 2 (DE 85), p. 72.)

On December 27, 2011, plaintiff filed an "inmate request to staff" directed to the attention of defendant Campos, the associate warden. (Def.s' Ex. 3 (DE 84).) In his grievance, plaintiff complained about the delay in scheduling his nasal surgery and stated that he continued to suffer from "a constant restriction in airflow, allergy-like symptoms, as well as other sinus problems."

(Id. p. 2.)  On January 22, 2012, a copy of plaintiff's December 27, 2011, "inmate request to staff"

was sent to defendant Hiscocks, associate warden.  (Am. Compl. (DE 80), ¶ 85.)  Plaintiff also

alleges that he spoke with defendant Hiscocks regarding medical staff's alleged failure to provide

him medical treatment between the dates of January 2012, and March 2012.  (Id.)

On April 9, 2012, plaintiff submitted a request for administrative remedy in which he stated

that his nasal injury was the result of the following:

> 1) my participation in a sanctioned recreational event at the
> recommendation of Unit Team; 2) that institutional staff was aware,
> in advance of all events, that they were being played on a field that
> was littered with rocks and gravel; 3) and that staff was aware that
> numerous injuries occur annually on the same field based on the same
> circumstances; 4) that I have been diligent in seeking out proper and
> corrective treatment; and 5) that the institution's failure to treat a
> known injury is causing additional medical issues and contributing
> to future compromises in my health.  Finally, in failing to provide the
> corrective surgery as already prescribed by the ENT specialist of their
> choosing, the institution is acting with deliberate indifference which
> is, and will continue to cause permanent health problems.

(Def.'s Ex. 7 (DE   84).)  Plaintiff requested priority placement for corrective surgery and

$3,500,000.00 in damages.  (Id.)

On April 17, 2012, defendant Revell denied plaintiff's grievance request for nasal surgery

and monetary compensation for his injuries.  (Id. Ex. 8.)  Defendant Revell explained in pertinent

part:

> During the period of October 19, 2010, and January 9, 2012, you
> were treated for groin/hamstring strain, chronic lower back pain,
> bursitis, a torn left elbow tendon which required surgery, left wrist
> pain, and abdominal pain.  These medical issues required diagnostic
> radiographs, a magnetic resonance imaging study, examinations and
> treatment by the orthopedic surgeon, and follow-up with physical
> therapy.  At no time did you complain of issues with your previous
> nose injury.

9

(Id.) Defendant Revell also advised plaintiff that the administrative remedy program does not permit an inmate to receive monetary compensation and referred plaintiff to the FTCA. (Id.) Plaintiff subsequently exhausted his administrative remedies for this claim. (Id. Exs. 9, 11, 14.) Then, on May 17, 2012, plaintiff was transferred from FMC Butner to FCI Butner. (Ansari Decl. ¶ 20.) Defendant Ansari had no further involvement with plaintiff after plaintiff was transferred to FCI Butner. (Id.)

On July 4, 2012, plaintiff contacted Clinical Director defendant Duchesne regarding the status of his consultation with an otolaryngologist. (Def.'s Ex. 2 (DE 85), p. 108.) In response, defendant Duchesne noted that plaintiff had recently been seen for a June 7, 2012, chronic care encounter, and that plaintiff should have raised the issue at that time. (Id.) Defendant Duchesne further instructed plaintiff to raise the issue during his next chronic care encounter. (Id.)

On August 23, 2012, Defendant Duchesne initiated a consultation request for an evaluation by an otolaryngologist in order to determine the medical necessity of additional procedures. (Id. p. 113.) Duchesne noted that since plaintiff's injury in 2010, there was no documentation of any continued issues related to plaintiff's nasal or facial pain. (Id. p. 16.)

In the interim, on January 10, 2012, plaintiff filed an administrative tort claim based upon the injuries he sustained in August 2010, and his medical care following such injuries. (Id. Ex. 5.) On September 19, 2012, the BOP denied plaintiff's administrative FTCA claim. (Id. Ex. 13.) The next day, Dr. Douglas Holmes, an otolaryngologist, examined plaintiff. (Id. p. 118.) Dr. Holmes reported that plaintiff had a narrowed right nasal valve with a septal nasal fracture and that it would be "a very difficult repair." (Id.) Dr. Holmes noted that if the URC approved the procedure, Dr. Bill Shockley, a University of North Carolina professor, would perform the procedure. (Id.) On October

12, 2012, the URC denied the evaluation request as medically unnecessary.  (Id. p. 129.)

In September 2014, plaintiff underwent a sleep study to determine whether plaintiff suffered from sleep apnea.  (Ansari Decl. ¶ 24;  Defs. Ex. 2, pp. 144-146.)  After the sleep study, medical staff recommended that plaintiff undergo a continuous positive airway pressure ("CPAP") study and lose weight.  (Ansari Decl. ¶ 24; Def.s' Ex. 2, p. 144.)  On February 5, 2015, the CPAP study was completed, and plaintiff was issued a CPAP machine.  (Ansari Decl. ¶ 24; Def.s' Ex. 2, p. 147-149.)

## DISCUSSION

### A.    Motion to Seal

Defendants Ansari, Campos, Hiscocks, and Revell move this court to issue an order sealing plaintiff's medical records, which are attached to their motion for summary judgment as Exhibit 2. Local Rule 26.1(a)(1) of this court's Local Rules of Practice and Procedure requires that medical records not be open to inspection or copying by any person except the parties and their attorneys. It further requires the filing of any such records to be accompanied by a motion to seal.  Based upon the foregoing, defendants' motion to seal is GRANTED, and defendants' Exhibit 2 hereby is sealed.

### B.    Motion for Discovery

Before addressing the motion for summary judgment filed by defendants Ansari, Campos, Hiscocks, and Revell, the court considers plaintiff's request for a continuance to conduct discovery pursuant to Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)).[5]  "As a general rule, summary judgment is appropriate only after adequate time for discovery."  Evans v. Techs.

---

[5]  Effective December 1, 2010, the Supreme Court amended Rule 56, and what is now Rule 56(d) previously was codified as Rule 56(f).  See Fed. R. Civ. P. 56, advisory committee's note ("The standard for granting summary judgment remains unchanged . . . Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).")

Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quotation omitted). Rule 56(d)

provides:

> If a nonmovant shows by affidavit or declaration that, for specified
> reasons, it cannot present facts essential to justify its opposition, the
> court may: (1) defer considering the motion or deny it; (2) allow time
> to obtain affidavits or declarations or to take discovery; or (3) issue
> any other appropriate order.

Fed. R. Civ. P. 56(d). Thus, Rule 56(d) allows a court to delay ruling on a motion for summary

judgment if the nonmoving party requires discovery to identify "facts essential to justify the party's

opposition." Crawford-El v. Britton, 523 U.S. 574, 599 n.20 (1998) (quotation omitted). However,

"Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery." Hamilton v.

Mayor & City Council of Baltimore, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (internal quotation

omitted). "Rather, to justify a denial of summary judgment on the grounds that additional discovery

is necessary, the facts identified in a Rule 56 affidavit must be essential to [the] opposition. "

Id. (quotation and citation omitted). A non-moving party's Rule 56(d) request for discovery is

properly denied "where the additional evidence sought for discovery would not have by itself

created a genuine issue of material fact sufficient to defeat summary judgment." Strag v. Bd. of Trs.,

Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995).

Here, the record reflects that defendants have provided plaintiff a copy of his medical

records, as well as other discovery materials. Plaintiff has failed to establish that further discovery

would develop evidence crucial to material issues before the court that is not currently in the record.

Plaintiff's conclusory allegations are insufficient to obtain an extension of time pursuant to Rule

56(d). Thus, plaintiff's motion for a continuance to conduct discovery is DENIED.

C.      Dispositive Motions

1.      Standards of Review

Defendants filed both a motion for summary judgment and motions to dismiss.  The court begins with defendants' motion for summary judgment.  Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986).  The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial.  Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Anderson, 477 U.S. at 250.

As for defendants' Rule 12(b)(6) motions, a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but  "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556.

13

Furthermore, the complaint need not set forth "detailed factual allegations," but instead must simply "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679). In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Id. at 255 (citations omitted).

When considering a Rule 12(b)(6) motion, a court must keep in mind the principle that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotations omitted). Nevertheless, Erickson does not undermine the requirement that a pleading contain "more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Twombly, 550 U.S. at 555). Furthermore, while a *pro se* complaint must be construed liberally, it is not the court's obligation "to discern the unexpressed intent of the plaintiff." Laber v. Harvey, 438 F.3d 404, 413 n. 3 (4th Cir. 2006).

2. Analysis

a. FTCA Claims

Plaintiff brings several negligence-based claims against the United States pursuant to the FTCA. The court first determines whether plaintiff complied with the jurisdictional requirements of the FTCA's administrative remedy procedure. The FTCA provides the exclusive remedy for common law negligence claims against federal employees acting within the scope of their

14

employment. See 28 U.S.C. §§ 1346, 2671–2680; see also, Alfa v. the United States, No. PJM 14-1773, 2015 WL 501969, at *1 (D. Md. Feb. 3, 2015) ("[N]o state common law action–such as a tort styled premise liability– can be asserted against the United States, since the FTCA subsumes all such claims 'for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.' ") (citing 28 U.S.C. § 1346(b)(1))). The FTCA specifies:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). In addition, 28 U.S.C. § 2401(b) states:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

Here, plaintiff presented evidence that the letter informing him of the denial of his administrative tort claim was dated September 19, 2012, and post-marked September 25, 2012. (Am. Compl. (DE 80), ¶ 6; Pl.'s Resp. (DE 100) Ex. 2.) Given the fact that there is evidence that the BOP mailed the denial letter on September 25, 2012, plaintiff's action filed on March 22, 2013[6]

---

[6] Providing petitioner the benefit of the mailbox rule, the court deems his complaint, dated March 22, 2013, but filed on March 26, 2013, to be filed on March 22, 2013. See Houston v. Lack, 487 U.S. 266, 276 (1988) (holding that a *pro se* prisoner's notice of appeal is filed at the moment it is delivered to prison authorities for mailing to the

was filed within six months of the date his administrative tort claim denial letter was sent, and the action is not time-barred.  See Carr v. Veterans Administration, 522 F.2d 1355, 1356, n. 1 (5th Cir. 1975) ("The district court was clearly justified in recognizing the postmark as probative of the date of mailing.") (citation omitted)

i.      Medical Claims

Plaintiff asserts that defendant United States breached its duty of care when it failed to provide appropriate medical care causing plaintiff to sustain a collapsed or obstructed nasal airway resulting in sleep apnea.  (2nd Am. Compl. ¶ 145.)   Plaintiff, additionally, asserts that defendant United States negligently disregarded Dr. Taylor's recommended surgical treatment plan causing plaintiff to suffer impaired breathing, obstructive sleep apnea, and physical deformity.  (Id. ¶¶ 165-166.)  In support of his negligence claim, plaintiff asserts Butner medical providers knew he suffered from a serious injury and that Dr. Taylor recommended corrective surgery.  (Id. ¶¶ 172-73.)  Plaintiff claims that despite such knowledge, Butner medical providers failed to act and/or delayed in providing him with medical services, causing his condition to worsen.  (Id.)

North Carolina imposes substantive legal requirements that a person must follow to pursue a medical malpractice claim.  See N.C. R. Civ. P. 9(j).  Under North Carolina Rule of Civil Procedure 9(j), a plaintiff's medical malpractice complaint must assert that the medical care has been reviewed by a person who is reasonably expected to qualify (or whom the plaintiff will move to qualify) as an expert witness and who is willing to testify that the medical care received by the plaintiff did not comply with the applicable standard of care.  See N.C. R. Civ. P. 9(j)(1), (2); see, e.g., Frazier v. Angel Med. Ctr., 308 F. Supp. 2d 671, 676 (W.D.N.C. 2004); Moore v. Pitt County

_____

district court).

Mem'l Hosp., 139 F. Supp. 2d 712, 713 (E.D.N.C. 2001). Alternatively, the complaint must allege

facts establishing negligence under the common-law doctrine of *res ipsa loquitur*. See N.C. R. Civ.

P. 9j(3). Failure to comply with Rule 9(j) is grounds for dismissal of a state medical malpractice

claim brought in federal court. See, e.g., Estate of Williams-Moore v. Alliance One Receivables

Mgmt., Inc., 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004); Frazier, 308 F. Supp. 2d at 676–77; Moore,

139 F. Supp. 2d at 713.

In his original complaint, plaintiff failed to allege that he obtained certification from an

expert willing to testify that his treating medical personnel did not comply with the applicable

standard of care. (See DE 1.) Although plaintiff subsequently amended his complaint and attempted

to correct the deficiency, the North Carolina Supreme Court has held that a plaintiff may not be

granted an extension of time to amend his initial complaint to include the necessary Rule 9(j)

certification. See Thigpen v. Ngo, 355 N.C. 198, 204, 558 S.E.2d 162, 166 (2002). Rather,

"[f]ailure to include the certification necessarily leads to dismissal." Id. at 202, 558 S.E.2d at 165.

Also, even if a plaintiff may be allowed to amend his complaint to include the necessary 9(j)

certification in some circumstances, plaintiff's amended pleading in the instant case does not suffice

because it does not assert that a medical expert reviewed his medical records prior to the date he

originally filed this action. See 2nd Am. Compl. ¶ 169; Thigpen, 558 S.E.2d at 166 ("This Court

also granted discretionary review to determine if an amended complaint which fails to allege that

review of the medical care in a medical malpractice action took place before the filing of the original

complaint satisfies the requirements of Rule 9(j). We hold it does not."). Thus, because plaintiff's

original complaint did not contain the necessary Rule 9(j) certification, he failed to comply with

Rule 9(j)'s certification requirement. See Rudisill v. United States, No. 5:13-CV-110-F, 2014 WL

1117976, at *3 (E.D.N.C. Mar. 20, 2014) (" In effect, [*Brown v. Kindred Nursing Ctrs. E.*, 364 N.C. 76, 692 S.E.2d 87 (2010)] precludes a party from filing a medical malpractice claim, obtaining Rule 9(j) certification after filing the lawsuit, and then requesting leave to amend the complaint to include the Rule 9(j) certification."); Savage v. United States, No. 5:10-CT-3169-FL, 2011 WL 3664798, at *2 (E.D.N.C. Aug. 18, 2011) ("Based upon the foregoing, plaintiff may not amend his initial complaint to include the necessary Rule 9(j) certification.").

As stated, Rule 9(j) provides one narrow exception to its medical certification requirement: a litigant is excused from Rule 9(j)'s pre-filing certification requirement if negligence may be established under the doctrine of *res ipsa loquitur*. See N.C. R. Civ. P. 9(j)(3); Smith v. Axelbank, 730 S.E.2d 840, 843 (N.C. App. 2012). This doctrine applies "only when the occurrence clearly speaks for itself." Diehl v. Koffer, 140 N.C. App. 375, 378, 536 S.E.2d 359, 362 (2000) (quotation and emphases omitted). Plaintiff has not alleged circumstances that support the application of *res ipsa loquitur* to his action. Thus, the *res ipsa loquitur* exception does not apply in this action.

Finally, plaintiff asserts that Rule 9(j) certification is not necessary in this action because the alleged failure of Butner medical staff to carry out the surgical treatment prescribed by Dr. Taylor does not fall within the parameters of medical malpractice, but is a claim for ordinary negligence. North Carolina defines a medical malpractice action as "[a] civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical . . . care by a health care provider." See N.C. Gen. Stat. § 90-21.11(2)(a). Here, plaintiff seeks to hold defendant the United States liable for the alleged failure to follow the recommendation of Dr. Taylor and failure to provide medical treatment for his broken nose. As such, plaintiff's negligence claim "sounds in malpractice, not ordinary negligence." Littlepaige v.

United States, 528 Fed. App'x 289, 294 (4th Cir. 2013) ("In short, the complaint sought damages "arising out of the furnishing or failure to furnish professional services in the performance of . . . health care by a health care provider.' N.C. Gen. Stat. § 90-21.11(2)a. It thus alleged medical malpractice, not ordinary negligence."); see, e.g., Duke Univ. v. St. Paul Fire & Marine Ins. Co., 96 N.C. App. 635, 640–41, 386 S.E.2d 762, 765–66 (1990). Based upon the foregoing, plaintiff failed to meet the requirements of Rule 9(j), and his negligence claims are DISMISSED without prejudice.

### ii.     Premises Liability

To succeed on a claim for damages against the federal government, a plaintiff must "show that an unequivocal waiver of sovereign immunity exists." Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005). "If the plaintiff fails to meet this burden, then the claim must be dismissed." Id. Under the FTCA, the United States waives sovereign immunity for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); see Millbrook v. United States, 133 S. Ct. 1441, 1443 (2013). A prisoner can sue under the FTCA to recover damages from the United States for personal injuries sustained during confinement in a federal prison due to the negligence of a government employee. See Millbrook, 133 S. Ct. at 1443; United States v. Muniz, 374 U.S. 150, 150, 153–58 (1963).

The FTCA does not allow recovery, however, for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function," even if "the discretion involved [is] abused." 28 U.S.C. § 2680(a). "The discretionary function exception 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'"

Holbrook v. United States, 673 F.3d 341, 345 (4th Cir. 2012) (quoting United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984)).

Applying the discretionary function exception initially requires identifying "the conduct at issue" that led to the alleged injury. S.R.P. ex rel. Abunabba v. United States, 676 F.3d 329, 332 (3d Cir. 2012). After identifying the conduct at issue, the court employs a two-part test to determine whether the discretionary function exception applies. See United States v. Gaubert, 499 U.S. 315, 322–23 (1991). First, the "exception covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'" Id. at 322 (quoting Berkovitz ex rel. Berkovitz v. United States, 486 U.S. 531, 536 (1988)).

> A government employee's conduct does not involve discretion where a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow and the employee has no rightful option but to adhere to the directive . . . . Where, however, a regulation authorizes or requires employee discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.

Holbrook, 673 F.3d at 345 (quotations and citations omitted). Second, if the alleged conduct involves discretionary judgment, the court must determine whether the exercise of judgment is "based on considerations of public policy." Gaubert, 499 U.S. at 323 (quotation omitted); Berkovitz, 486 U.S. at 537; see Holbrook, 673 F.3d at 345.

The government's alleged negligent maintenance of the softball field in this case satisfies both prongs of the discretionary function exception. The conduct at issue concerns discharging defendants' duty pursuant to 18 U.S.C. § 4042(a) to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all [inmates]." See, also, 28 C.F.R. §§ 544.32, 544.81(f). Second, the construction and maintenance of the Butner softball field under the institutional policies in effect at that time "is precisely the type of discretion or choice that falls within the

20

discretionary-function exception." Rodriguez v. United States, 415 F. App'x 143, 146 (11th Cir.

2011) (per curiam); see, e.g., McCoy v. United States, No. C-12-3821 THE (PR), 2014 WL 261833,

at *4 (N.D. Cal. Jan. 23, 2014); Alvarado-David v. United States, 972 F. Supp. 2d 210, 214–15

(D.P.R. 2013); Brown v. United States, No. CV 00-0529 (RR), 2001 WL 477250, at *2 (E.D.N.Y.

Mar. 19, 2001). Because both prongs of the two-part test are satisfied, the discretionary function

exception bars plaintiff's FTCA claim for the injury he suffered on the softball field.

      b.    Bivens Claims

     Defendants Ansari, Campos, Hiscocks, and Revell assert the affirmative defense of qualified

immunity. Government officials are entitled to qualified immunity from civil damages so long as

"their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other

words, a government official is entitled to qualified immunity when (1) the plaintiff has not

demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue

was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555

U.S. 223, 236 (2009).

     An Eighth Amendment claim based upon deliberate indifference to serious medical needs

requires two showings, one objective and one subjective. First, an inmate must prove that "the

deprivation of a basic human need was objectively sufficiently serious." De'Lonta v. Angelone, 330

F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and alterations omitted, emphasis in

original). Second, the inmate must prove that "subjectively the officials acted with a sufficiently

culpable state of mind." Id. (internal quotation marks and alterations omitted, emphasis in original).

21

Defendants do not dispute that plaintiff suffered serious injuries. Accordingly, the court's analysis focuses on the subjective prong of the Eighth Amendment test–whether defendants acted with deliberate indifference. Deliberate indifference "sets a particularly high bar to recovery." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). "In order to establish a claim of deliberate indifference to a medical need, the need must be both apparent and serious, and the denial must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). "[D]eliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). An inmate is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

i.      Defendant Linzau

The court begins with defendant Linzau's motion to dismiss plaintiff's Eighth Amendment claim. Plaintiff's claim against defendant Linzau, the physician on duty at the time plaintiff sustained his injuries on August 10, 2010, arises out of Linzau's initial examination of plaintiff and notation that there was "no gross evidence [of] a fracture" and instruction that plaintiff to return the next day for a "more thorough examination." (2nd Am. Compl., ¶ 55.) To the extent plaintiff alleges that defendant Linzau initially misdiagnosed his nasal condition, such misdiagnosis alone

cannot support a constitutional claim for deliberate indifference to a serious medical need, especially given the fact that plaintiff was instructed to follow-up with medical staff the following day. See Estelle, 429 U.S. at 105-106. See Johnson, 145 F.3d at 168; see also, Farmer, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he [or she] should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

Aside from Dr. Linzau's initial examination of plaintiff on August 10, 2010, plaintiff has made no allegation to suggest that defendant Linzau had any personal involvement with plaintiff's medical care or that defendant Linzau acted with any intent to cause plaintiff harm. Plaintiff's conclusory allegations that defendant Linzau was aware of plaintiff's need for surgery and ignored such need, are not sufficient to establish a constitutional violation. See Iqbal, 556 U.S. at 676 (stating conclusory allegations are "not entitled to be assumed true"); White v. White, 886 F.2d 721, 724 (4th Cir. 1989) (pro se litigant complaints must be liberally construed; however, a minimum level of factual support is required). Based upon the foregoing, plaintiff fails to state an Eighth Amendment claim against Linzau and defendant Linzau's motion to dismiss is GRANTED. Because the court dismisses plaintiff's claim against defendant Linzau for failure to state a claim, the court does not reach defendant Linzau's remaining ground for dismissal.

ii.     Defendant Ansari

Plaintiff contends that defendant Ansari acted with deliberate indifference to his serious medical needs because defendant Ansari failed to follow Dr. Taylor's August 30, 2010, recommendation that plaintiff receive nasal surgery. Although plaintiff's surgery was not scheduled, FMC Butner medical staff, including defendant Ansari, saw plaintiff and treated him for various

unrelated medical conditions on numerous occasions from October 30, 2010, through April 29, 2011. (Id. pp. 29-39, 42, 44-45.) Plaintiff's medical records reflect that he did not complain about his alleged nasal issues during these medical appointments. (See id.). Plaintiff attributes his failure to raise his nasal issues during these appointments to the BOP's policy directing that only one medical complaint may be addressed per medical visit. (Pl.'s Decl. (DE 100), ¶ 6; (DE 101), ¶ 6.) Plaintiff, however, fails to explain why he did not submit a separate sick call request related to his nasal condition until December 27, 2011, when he filed a grievance regarding the issue. The court finds this fact particularly relevant given the numerous sick call requests plaintiff submitted and extensive treatment plaintiff received related to other medical conditions during this time period.

While admitting that he did not raise his nasal condition during his medical appointments, plaintiff does present evidence to suggest that he filed inmate requests, or "cop-outs," addressed to defendant Ansari dated January 7, 2011, March 29, 2011, and October 18, 2011, asking about the status of his nasal surgery. (Pl.'s Resp. (DE 100), Exs. 3-6.) However, the "cop-outs" are not signed by any prison staff member and there is no indication from the face of the individual "cop-outs" that they were received by prison administration or defendant Ansari. (Id.) Defendant Ansari denies receiving the aforementioned "cop outs" from plaintiff. (Ansari Decl. ¶ 13.)

Regardless of whether Ansari received the "cop-outs," the record reflects that defendant Ansari ordered follow-up x-rays of plaintiff's nasal bones on April 29, 2011, shortly after plaintiff officially filed his December 27, 2011, grievance. (Def.s' Ex. 2 (DE 85), p. 44; Ex. 3 (DE 84).) The fact that plaintiff disagreed with defendant Ansari's decision to forgo surgery after obtaining the radiologist's report indicating evidence of interval healing, reflects a disagreement with Ansari's

treatment plan. Plaintiff's disagreement with Ansari's treatment plan does not rise to the level of a constitutional violation. See Russell, 528 F.2d at 318-319.

Plaintiff, further, has produced no evidence to suggest that any delay in treating plaintiff's nasal condition was a result of defendant Ansari's intentional actions or that defendant Ansari otherwise deliberately disregarded plaintiff's medical needs. See Farmer, 511 U.S. at 833-34 (finding that deliberate indifference requires that a prison officials knows of and disregards a substantial risk to an inmate's health); Webb v. Hamidullah, 281 F. App'x 159, 167 (4th Cir. 2008) ("[W]hen Webb informed the prison medical personnel that he was in pain, they did not ignore his complaints. Rather, they monitored his condition, observed no objective signs of pain or change in the size of his hernia, provided pain medications, and concluded that the hernia was yet reducible. . . . In such circumstances, Webb's allegation of improper delay fails to support the proposition that summary judgment was improperly awarded."); see also Ward v. Deboo, No. 1:11cv68, 2012 WL 2359440, at *13 (N.D. W. Va. Jan. 18, 2012) ("The medical records submitted by the defendant demonstrate that the plaintiff was provided regular, continuous and appropriate medical care under the circumstances, and that there has never been an intentional interference with a prescribed course of treatment. Accordingly, nothing the record shows that the plaintiff's knee condition was not timely or properly treated"), aff'd, 482 F. App'x 852 (4th Cir. Oct. 16, 2012). Rather, the record reflects that any delay in treating plaintiff's nasal condition was attributable to plaintiff's failure to complain to medical staff that he was suffering from any adverse effects from his nasal condition.

Based upon the foregoing, plaintiff has not shown that Ansari acted with deliberate indifference to plaintiff's nasal condition. Because plaintiff failed to establish that Ansari actually

knew of and disregard an objectively serious condition, medical need, or risk of harm, defendants Ansari is entitled to qualified immunity for this claim.

### iii. Supervisor Liability

During the relevant time period, defendant Campos was employed as associate warden at FCI Butner, defendant Revell was employed as the complex warden at the Federal Correctional Complex ("FCC"), and defendants Hiscocks was employed as the associate warden over the health and services department. (Campos, Hiscocks, and Revell Decls. ¶ 1.). Supervisors, such as defendants Campos, Revell, and Hiscocks, may not be held liable in a § Bivens action based upon a theory of *respondeat superior*. Iqbal, 556 U.S. at 676; Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978). Instead, "liability ultimately is determined 'by pinpointing the persons in the decision making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (quoting Slakan v. Porter, 737 F.2d 368, 372-73 (4th Cir. 1984)). To establish supervisor liability under § 1983, a plaintiff must establish:

> (1)    that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2)    that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and
>
> (3)    that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799.

Plaintiff alleges that he informed defendants Revell, Campos, and Hiscocks of Dr. Taylor's recommendations and they refused to act on the recommendation. (Am. Compl. (DE 80), ¶¶ 198, 200.) Here, plaintiff filed an "inmate request to staff" directed to the attention of defendant Campos on December 27, 2011, which was forwarded to defendant Hiscocks on January 22, 2012. (Id. ¶ 85; Def.s' Ex. 3 (DE 84).) Plaintiff then submitted an administrative remedy request on April 9, 2012. (Def.'s Ex. 7 (DE 84).) Defendants Revell, Campos, and Hiscocks investigated plaintiff's complaints and denied plaintiff's grievance request on April 17, 2012, on the grounds that plaintiff had been seen for various medical complaints from October 19, 2010, through January 9, 2012, but had not complained about his nose injury. (Def.s' Ex. 8.) Further, on October 12, 2012, the URC denied the evaluation request as medically unnecessary.[7] (Id. Ex. 2, p. 129.) Moreover, as was done in this case, prison supervisory officials are entitled to rely on medical judgments and expertise of prison physicians and medical personnel concerning the course of treatment deemed necessary for prisoners. See Shakka, 71 F.3d at 167 (citation omitted); Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002) ("Prison officials cannot substitute their judgment for a medical professional's prescription.").

Additionally, there is no evidence that any supervisory defendant had actual or constructive knowledge that any subordinate was engaged in conduct that posed a pervasive and unreasonable risk of injury. Nor has plaintiff shown any causal link between the supervisory defendants' alleged actions and plaintiff's alleged injury. See Slakan, 737 F.2d at 372-73. Plaintiff, further, has not presented any evidence to show that the supervisory defendants' response to plaintiff's complaints

---

[7] To the extent plaintiff disagrees with defendant Duchesne's decision on behalf of the URC to deny plaintiff nasal surgery as medically unnecessary, such disagreement is not actionable pursuant to Bivens. Russell v. Sheffer, 528 F.2d 318, 318-319 (4th Cir. 1975).

was so inadequate to demonstrate deliberate indifference. Based upon the foregoing, the court finds no constitutional violation, and that Campos, Revell, and Hiscocks are entitled to qualified immunity. As a result, these defendants' motion for summary judgment is GRANTED.

## CONCLUSION

Based upon the foregoing, the court orders as follows:

(1)     Defendants' motion to seal (DE 86) is GRANTED, and defendants' Exhibit 2 is hereby SEALED;

(2)     Plaintiff's motion for a continuance to conduct discovery (DE 100) is DENIED;

(3)     Defendants' motion for summary judgment (DE 83) is GRANTED. Plaintiff's FTCA medical-related negligence claims are DISMISSED without prejudice;

(4)     Defendant Linzau's motion to dismiss (DE 93) is GRANTED;

(5)     The clerk of court is DIRECTED to close this case.

SO ORDERED, this 21st day of March, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge

28